IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DENVER BLACKWELL,                    )
                                     )
                    Plaintiff,       )
                                     )
         v.                          )          Case No.  1:21-cv-00176-AGF
                                     )
CORIZON HEALTH CARE, et. al.,        )
                                     )
                    Defendants.      )

## **MEMORANDUM AND ORDER**

The matter is before the Court on Defendants Jason Lewis' and Bill Stange's

Motion for Summary Judgment.  Doc. No. 48.  Pro Se Plaintiff Denver Blackwell

brought this action pursuant to 42 U.S.C. § 1983 against Corizon Health Care, Dr. Oscar

G. Goodhand, Medical Administrator Rachel "Molly" Leija, Deputy Director of Adult

Institutions Jason Lewis, and SECC Warden Bill Stange.  Plaintiff claims that Defendants

failed to provide adequate dental care and were deliberately indifferent to his dental care

needs.

On December 8, 2021, upon initial review under 28 U.S.C. § 1915, the Court

dismissed the claims against Dr. Goodhand.  Doc. No. 6.  On January 26, 2022,

Defendants Lewis and Stange filed a motion to dismiss (Doc. No. 17), and the Court

dismissed Plaintiff's official capacity claims against Lewis and Stange for monetary

damages, but denied dismissal of all other claims.  Doc. No. 30.  Defendants Corizon and

Leija also filed a motion to dismiss (Doc. No. 19), which was denied.  Doc. No. 29.

Defendants Corizon and Leija have also filed a motion for summary judgment, which will be addressed by the Court separately.[1]  Doc. No. 45.

For the reasons set forth below, Defendants Lewis' and Stange's motion for summary judgment will be granted.

## BACKGROUND

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff, for purpose of the motion before the Court, the record establishes the following. The claims against Defendants Lewis and Stange are limited to: (1) Southeast Correctional Center (SECC) has an extraction only practice when it comes to dental care, which are guidelines passed down by the SECC Administration and Corizon Health Care, Plaintiff is a victim of this practice and continues to suffer because of it and (2) SECC has suffered over the past two years from systematic deficiencies in medical staffings and these deficiencies have interfered with Plaintiff's medical needs/Defendants failed to secure permanent medical professionals, assigned on a full-time basis, to provide professional medical care at SECC.  Doc. No. 1 at 7-8; Doc. No. 70 at 3-4.

**Dental Care**

Plaintiff is incarcerated at SECC in Charleston, Missouri and has been incarcerated at SECC at all times relevant to his complaint.  Doc. No. 49-1 at ¶ 1.  On February 27, 2019, Plaintiff filed a Health Service Request (HSR) regarding a broken

---

[1]     On February 13, 2023, Corizon filed for bankruptcy in the Southern District of Texas, Case No. 23-90086 (CML).  See Doc. No. 63.  As such, all claims against Corizon are automatically stayed pending the resolution of the bankruptcy.

tooth. [2]  On March 1, 2019, Plaintiff was seen by dental for complaint of a broken tooth,

and the dentist placed him on the extraction list to extract tooth #15. Doc. No. 47 at ¶ 11.

On April 26, 2019, Plaintiff received a letter from Corizon stating that he was on the

extraction list and at that time the dental clinic did not have a full-time dentist but that

they hoped to have one in the near future.  Doc. No. 71-4.  The letter also stated,  "[i]f

you are experiencing dental problems that need immediate attention (facial swelling,

fever) see NSC for more information."  *Id.*

On August 29, 2019, Plaintiff was seen by dentist Dr. Oscar Goodhand for an

exam and extraction of tooth #15.  Dr. Goodhand noted that the extraction was difficult,

as the tooth was ankylosed to bone and a large piece of bone came out with the tooth.

Doc. No. 47 at ¶ 12.  Dr. Lovelace gave emergent approval to send Plaintiff to an oral

surgeon.  *Id.*  Plaintiff was scheduled to see the oral surgeon within one hour, but the oral

surgeon canceled the appointment, and it was rescheduled for the next day.  *Id.*

On August 30, 2019, Plaintiff saw oral surgeon Dr. Michael Bauman at Jefferson

City Oral & Maxillofacial Surgery (JCMOS) for a possible bone grafting.  *Id.* at ¶ 13.

Dr. Bauman noted that he did not believe that the site could be closed properly with tooth

#14 in place due to the lack of bone on the distal of the roots, so he recommended

---

[2]      There is no documentation of this HSR in the record.  Plaintiff also alleges that
within two months of arriving at SECC in May 2018, he was assessed by a dental
professional for a tooth filling.  Doc. No. 71 at ¶ 4.  He further alleges that in 2018,
SECC was without a permanent dentist, and he was placed on a waiting list and never
treated.  *Id.* at ¶ 5.  There are no medical records to substantiate these claims; Plaintiff's
medical records indicate he was seen for an initial assessment and physical in May 2018,
but there are no records regarding dental care until March 1, 2019.

extraction of #14 with subsequent closure of the oral antral communication.  Dr. Bauman also stated that after the site was closed and if Plaintiff wanted a bone graft to replace the bone in the site, he would need to see an ENT as he would need a vascularized graft.  Dr. Bauman also noted that Plaintiff would need to return for surgery as he didn't keep collagen membranes of the size needed in stock.  *Id.*

On September 10, 2019, Plaintiff underwent oral surgery for a maxillary bone graft with closure of OA fistula.  *Id.*  Plaintiff suffered various complications following his surgery.  *Id.* at ¶¶ 12-28.

On June 2, 2020, Plaintiff saw dentist Dr. Derrik Richard regarding broken/chipped teeth on his right side.  *Id.* at ¶ 18.  Dr. Richard took x-rays and found that teeth #3 and #31 had fractured fillings.  *Id.*  Plaintiff was placed on a filling waitlist. On January 5, 2021, Plaintiff saw Dr. Richard again, and he was also placed on a filling waitlist for tooth #30.  *Id.*  Plaintiff was seen by dental two more times in Spring of 2021. *Id.* at ¶¶ 20-21.  On August 9, 2021, Dr. Richard recommended extraction of tooth #30, and the extraction was performed on September 20, 2021.  *Id.* at ¶¶ 22-24.  As of November 2021, Plaintiff remained on the filling waitlist for tooth #3 and #31.

Fillings, extractions and other nonemergent treatment were delayed during the COVID-19 pandemic.  *Id.* at ¶ 28.

**Grievances**

Pursuant to the Prison Litigation Reform Act (PLRA), prisoners must exhaust administrative remedies before filing suit.  42 U.S.C. § 1997e(a).  The Missouri Department of Corrections' (MDOC) grievance policy is set out in the MDOC

Department Manuel, D5-3.2 (Doc. No. 49-5) and will be discussed further below.  There
are three grievances at issue here.

Grievance No. 19-1015

On September 11, 2019, Plaintiff filed an Informal Resolution Request (IRR),
which stated in relevant part that he was "denied, delayed, and provided grossly
inadequate medical treatment, causing cruel and unusual punishment by deliberate
indifference, violating [his] rights under the eigh[th] and fourteenth amendments of the
United State Constitution."  Doc. No. 49-4 at 8.  Plaintiff's IRR then provided a synopsis
of his August 29, 2019 tooth extraction and corresponding complications.  *Id.* at 9.  In the
first paragraph, Plaintiff states the following:

> [O]n the Thursday morning of August 29th, at approximately 7:55 a.m., I
> went to the medical unit to see the dentist, [D]r. Goodhand; his medical
> assistant was also present.  We first discussed the two broken teeth in my
> mouth and how I have [b]een waiting to see a dentist for over six months.
> He stated how there has been a lack of dentists here at SECC and for [a]
> period of months, no dentist at all.

*Id.*  The IRR goes on to detail the issues with the extraction.

On October 3, 2019, Defendant Leija, responded to Plaintiff's IRR.  *Id.* at 7.  The
response stated that "the purpose of this review is to determine if medically necessary
health care, as determined by your health care providers, has been provided to you."  *Id.*
The response did not address the wait times or lack or dentists at SECC.

On November 22, 2019, pursuant to the next step in the MDOC grievance policy,
Plaintiff filed a grievance.[3]  *Id.* at 4.  The grievance did not mention the delay in

---

[3]      The Court notes that this grievance is untimely pursuant to the grievance policy

treatment or lack of dentists at SECC.  The grievance stated that Leija's IRR response did "not address the issue that I listed under 'Complaint' in the original IRR dated 10-3-19" and "[t]he issue at hand is the grossly inadequate medical treatment that I received from Dr. Goodhand, which rises to a level of negligence and medical malpractice."  *Id.*

On December 4, 2019, Plaintiff received a response to his grievance from R. Anderson RN, the Medical Director, Phillip Tippen, MD and acting Warden Clark.  *Id.* at 5.  On June 7, 2020, Plaintiff filed an untimely grievance appeal.  *Id.* at 2.  The appeal did not specifically mention the waitlist or lack of dentists.  On January 7, 2021, the Missouri Director of Dental Services – Corrections, Dr. E. Jackson, issued an Appeal Response. *Id.* at 3.  The response stated in relevant part:

> Tooth #15 was a difficult extraction and the roots of the tooth were ankylosed (fused to the tooth socket).
>
> Even with the proper x-rays this situation cannot be predicted.  You were sutured and almost immediately referred to an oral surgeon.
>
> The chronology of your treatment was well within accepted standards.

*Id.*

Grievance No. 19-1198

On November 1, 2019, Plaintiff filed an IRR regarding a bacterial infection he contracted when housed in medical following the surgery.  *Id.* at 21.  Neither the IRR nor any of the subsequent grievances or appeals mention any delay in dental treatment, dental

---

which states that a grievance must be filed with seven days following an IRR response. Doc. No. 49-5 at 15.  However, the untimeliness of this grievance is not dispositive given that MDOC officials responded on the merits, as discussed in further detail below.

staff shortages, or extraction only practices.  *Id.* at 27-31.  As such, this grievance is not

relevant to the claims against Defendants Lewis and Stange.

Grievance No. 21-643

On September 8, 2021, Plaintiff submitted an IRR which stated:

I am consistently being placed on waiting list for years for simple dental procedures, such as fillings and the fixing of a broken tooth and having to endure the pain and problems that come from having a cavity and broken tooth until the teeth are in such bad conditions that the only thing left to do is to extract the tooth.

*Id.* at 32.  On October 15, 2021, Plaintiff received an IRR Response from Defendant

Leija, which stated in relevant part:

Your concern is understood to be: You want to be seen by dental and all teeth that need repaired or filled to be taken care of.

Subsequent to review and investigations, the results are as follows: You were seen by dental on 8/9/21 in which they recommended a tooth extraction of #30.  On 9/20/21 you were seen and tooth #30 was extracted and #3 and #31 were recommended to fill and partial impressions made.

In conclusion, you have been assessed and a treatment plan started.  You have been put on the filling list and will be seen in order of placement.

*Id.* at 33.

On December 3, 2021, Plaintiff filed an untimely grievance.  *Id.* at 36.  The

grievance reiterated his claims about the wait times and further explained that his tooth

was only pulled because he sat on the waitlist for over two years while the tooth could

have still been saved.  He further states that while Defendant Leija acknowledged that

Plaintiff was on multiple dental waiting lists, she did not address Plaintiff's complaint

that the only work that gets done are extractions.  *Id.*  There was no grievance response

from a MDOC representatives, nor was there a subsequent appeal by Plaintiff.

**Defendants Lewis and Stange**

Defendant Jason Lewis has been the Deputy Director of Adult Institutions for

MDOC since May 2020.  Doc. No. 49-1 at ¶ 2.  Prior to that time, he was warden at

SECC.  *Id.*  Lewis claims that he does not recall any issues with dental shortages when he

was warden at SECC, nor does he recall that there was any delay in scheduling dental

services.  Lewis Aff., Doc. No. 49-2, at ¶ 2.  He further affirmed under oath that he had

no part in hiring dental professionals to provide services at SECC, or any other

institution. *Id.* at ¶ 3.  He noted that the medical services provider never reported that they

were having any difficulties obtaining dental providers for MDOC's institutions.  *Id.* at ¶

5.  He also stated that had he received any indication that there was a shortage of dentists

at SECC he would contact the medical services provider.  *Id.* at ¶ 4.

Defendant Bill Stange was employed at SECC from December 2009 to September

2019 and again from May 19, 2020 to present.  Stange Aff., Doc. No. 49-3, at ¶ 1.  He is

currently the warden at SECC and has been in that position since May 2020.  *Id.*  He

affirmed under oath that he has no part in hiring dental professionals to provide services

at SECC.  *Id.* at ¶ 2.  He was also aware that there was a shortage of dentists and a long

waiting list, but stated that MDOC's policies still provided that offenders receive dental

care when needed and that they receive care from specialists when necessary.  *Id.* at ¶ 3.

## **ARGUMENT OF THE PARTIES**

Defendants Lewis and Stange argue that they are entitled to qualified immunity; Plaintiff failed to state a claim against them for deliberate indifference to his serious medical needs; and Plaintiff's claims are barred because he failed to exhaust the internal grievance process.

In opposition, Plaintiff contends that Defendants Lewis and Stange are not entitled to qualified immunity because prison officials are under a constitutional duty to ensure medical treatment is furnished to prisoners in need. Plaintiff further argues that where such duty is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability. Plaintiff also argues that Defendants Lewis and Stange were deliberately indifferent to his serious medical needs because they prevented him from receiving treatment by failing to ensure that a sufficient number of dentists were staffed. Lastly, Plaintiff argues that his claims were fully exhausted in Grievance No. 19-1015.[4]

---

[4] Plaintiff also argues that summary judgment is improper because Defendants are in possession of evidence to substantiate Plaintiff's claim and failed to disclose such evidence. The Court finds that this argument is without merit because Defendants Lewis and Stange have provided all their discovery answers to the Court and answered all of Plaintiff's interrogatories and requests for production without objection. To the extent Plaintiff complains that Defendants refused to turn over their contract with Corizon, Defendants explained that they do not have access to such contract, nor does Plaintiff explain how the contract would affect his claims. Further, these claims do not meet the requirements of Fed. R. Civ. P. 56(d) which requires the plaintiff to identify specific facts that further discovery might uncover, and show how those facts are relevant in rebutting defendant's showing that there is an absence of genuine issues of material fact. *See Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1050 (8th Cir. 2012); *Chambers v. The Travelers Cos., Inc.*, 764 F. Supp. 2d 1071, 1082 (D. Minn. 2011).

Additional facts and arguments are cited below as relevant to particular issues.

## LEGAL STANDARD

### Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted).  To avoid summary judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992) (citation omitted).  The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation marks and citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Combs v. Cordish Cos.*, 862 F.3d 671, 680 (8th Cir. 2017) (citation omitted).

## DISCUSSION

## Procedural Exhaustion

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires that a prisoner exhaust all available administrative remedies before he commences an action under any federal law.  Exhaustion means that, before filing suit, Plaintiff is obligated to complete the administrative review process in accordance with the correctional facility's applicable procedure, including applicable deadlines.  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  The level of detail will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion. *King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1054 (8th Cir. 2010) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  "If exhaustion was not completed at the time of filing, dismissal is mandatory."  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion."  *Porter v. Strum*, 781 F.3d 448, 451 (8th Cir. 2015).

The MDOC grievance policy is set out in the Missouri Department of Corrections-Department Manual, D5-3.2 (Doc. No. 49-5).  MDOC grievance policy requires that "each informal resolution request and offender grievance is limited to one grievable issue and should not be expanded to include other issues at any stage of the review process." *Id.* at 7.  However, "MDOC procedure does not require a prisoner to file separate IRRs for each claim against each prison official arising out of an 'alleged incident'; a prisoner need only state 'the subject of the complaint' in the IRR."  *Taylor v. Null*, No. 4:13-CV-

11

1065-CEJ, 2015 WL 10060963, at *2 (E.D. Mo. Mar. 5, 2015) (quoting MDOC, D5-3.2 Offender Grievance Procedure, effective Jan. 2, 2009).

The MDOC grievance policy details a three-step process.  First, the inmate files an Informal Resolution Request ("IRR") within 15 calendar days of the incident.  If dissatisfied with the IRR response, the inmate has seven days from receiving the response to file a grievance.  If dissatisfied with the grievance response, he has seven days to submit a grievance appeal.  Failure to timely file a grievance or submit a grievance appeal "will result" in the complaint or appeal "being considered abandoned."  Doc. No. 49-5 at 10-17.

The MDOC policy also indicates that the Chief Administrative Officer ("CAO") or designated staff member shall respond to the grievance within 40 days of receipt.  *Id.* at 17.  In the event this time limit expires without a response from the correction facility, the offender is allowed to move to the next stage of the grievance process.  *Id.* at 14.  Exhaustion of the grievance procedure is defined as "completion of the formal grievance procedure at the appeal level."  *Id.* at 3.

Defendants Lewis and Stange argue that Plaintiff never submitted separate complaints regarding "MDOC policies and whether the DOC Defendants were involved in hiring dental personnel" and the grievance that did address the wait times for dental procedures (No. 21-643) was not fully exhausted.  Plaintiff argues that his claims were exhausted through Grievance No. 19-1015 and multiple oral grievances.

12

Grievance No. 19-1015

As an initial matter, the Court recognizes that Plaintiff's grievance and grievance appeal were untimely pursuant to the MDOC grievance procedure, however the prison officials nevertheless responded to the merits of his grievance and his appeal. As such, Plaintiff's untimeliness here does not preclude proper exhaustion. *Hammet v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (holding that the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits).

The pertinent issue with this grievance is whether the inadequate extraction procedure and the delayed treatment/wait times and lack of dentists were properly brought under the same grievance as a single grievable issue. The majority of the IRR addressed the extraction procedure performed by Dr. Goodhand, but it did specifically state, "I was denied, delayed, and provided grossly inadequate medical treatment" and that Plaintiff discussed with Dr. Goodhand that he had been "waiting to see a dentist for over six months" and Dr. Goodhand told him that "there has been a lack of dentists at SECC, and for [a] period of months, no dentist at all." Doc. No. 49-4 at 8-9. Arguably, the subject of this complaint could be construed broadly to be "denied, delayed and inadequate dental treatment," not merely Dr. Goodhand's inadequate extraction. *Id.* However, Plaintiff's appeal dispels this conclusion:

> The IRR Response issued by Molly Leija (IRR #19-1015) is insufficient in that it speaks solely to the fact that I did receive dental care on the dates in question. This response does not address the issue that I listed under "Complaint" in the original IRR.
>
> **The issue at hand is the grossly inadequate medical treatment that I received from Dr. Goodhand, which rises to a level of negligence and**

13

> **medical malpractice**.  The [summary] that I listed in IRR #19-1015 serves as an outline of events on the day(s) in question.  There is a reasonable expectation that a medical professional understand the full nature and scope of a procedure before they begin cutting on a patient…

*Id.* at 4 (emphasis added).  Further, the appeal does not mention wait times or a lack of dentists.  In light of Plaintiff's clarification of the grievable issue in his appeal, the Court is not convinced that the issue of dental staffing and extended wait times was properly exhausted in this grievance.  To the extent Plaintiff relies on this grievance to support his claim of exhaustion, dismissal is appropriate.  However, even assuming this grievance properly exhausted Plaintiff's claims on these issues, Defendants Lewis and Stange would still be entitled to summary judgement, as discussed below.

Grievance No. 21-643

This grievance specifically addressed the extended wait times and arguably addressed the extraction only practice.  However, Defendants argue that this grievance was not fully exhausted.  The Court agrees.  Plaintiff filed this IRR on September 8, 2021, and received a response on October 15, 2021.  Upon receiving the response, per MDOC grievance procedure, Plaintiff had seven days to file his grievance, however Plaintiff did not file his grievance until December 3, 2021.  Failure to timely file a grievance is considered abandonment.  While there are exceptions to this seven-day requirement, Plaintiff did not argue that any such exceptions applied here nor does it appear from the record that any such exceptions would apply.  And unlike the previous grievance, no MDOC official responded to this untimely grievance on the merits.  As

such, this grievance was not properly exhausted.  As Plaintiff did not properly exhaust his claim regarding wait times or the lack of dentists, the claim must be denied.

## Qualified Immunity

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burbridge v. City of St. Louis, Mo.*, 2 F.4th 774, 780 (8th Cir. 2021) (internal quotation omitted).  "Once a defense of qualified immunity is raised, a plaintiff must offer 'particularized' allegations of unconstitutional or illegal conduct." *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) (citation omitted). The Supreme Court has emphasized that "qualified immunity represents the norm," *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), and its protections extend to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When analyzing qualified immunity claims, courts consider two critical factors: (1) whether the alleged facts demonstrate that the public's official conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.*  "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mitchell v. Shearrer*, 729 F.3d 1070, 1076 (8th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  There is no requirement that "the

very action in question has previously been held unlawful," but for an official action to violate a clearly established right, the unlawfulness of that action must be apparent in light of pre-existing law. *Anderson*, 483 U.S. at 640. "In other words, the right violated must have been established 'beyond debate.'" *Mendoza v. United States Immigration & Customs Enforcement*, 849 F.3d 408, 417 (8th Cir. 2017) (citations omitted). If a defendant raises a qualified immunity defense in a summary judgment motion, "the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013).

Deliberate Indifference

The constitutional right that Plaintiff claims was violated by Defendants Lewis and Stange is his right under the Eighth Amendment to be free from cruel and unusual punishment. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care…." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Circuit has explicitly recognized the right to adequate dental care: "an inmate's right to treatment for serious and painful dental conditions has been clearly-established for more than three decades." *Williams v. York*, 891 F.3d 701, 707 (8th Cir. 2018). In the context of a prisoner's claim of inadequate medical care, the Supreme Court has held that to show an Eighth Amendment violation, a prisoner must demonstrate more than medical negligence; he must show that the prison employee's conduct constituted "deliberate indifference to serious medical needs." *Estelle v.*

16

*Gamble*, 429 U.S. 97, 106 (1976).

In order to show deliberate indifference, Plaintiff must show that (1) he suffered from objectively serious medical needs, and (2) Defendants actually knew of, but deliberately disregarded those needs. *See Mead v. Palmer*, 794 F.3d 932,936 (8th Cir. 2015). Here, the parties do not contest that Plaintiff suffered from an objectively serious medical need, so the Court's analysis turns on the second element of deliberate indifference, which is a high threshold that goes well beyond negligence or gross negligence. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). To establish deliberate indifference based on a claim of inadequate care, there must be evidence that the prison officials "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk." *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (emphasis in original). This level of mental culpability is "akin to criminal recklessness." *Id.* (internal quotation marks and citation omitted).

Plaintiff's claims against Defendants Lewis and Stange rest on the lack of permanent, full-time dentists. In *Cullor v. Baldwin*, 830 F.3d 830 (8th Cir. 2016), the Eighth Circuit addressed a somewhat similar deliberate indifference claim based on inadequate staffing. There, the inmate was unable to obtain dentures for over two years, despite being placed on a waiting list for dentures. The inmate claimed that the supervisory defendants were deliberately indifference to his objective medical need by failing to address a shortage of dentists in the prison, thereby subjecting the inmate to needless pain. The Eighth Circuit affirmed the district court's summary judgment for the defendants, which held that the inmate failed to show the subjective prong, i.e.,

17

establishing that the supervisory defendants deliberately disregarded the inmate's need for dentures.  The Court acknowledged that the delay in providing the inmate with dentures was caused by a turnover or shortage of dentists in the prison; however, despite the supervisory defendant's actual knowledge regarding the long wait for dentures at the prison, the Court concluded that the shortage of dentists was not created or exacerbated by the supervisory defendants.  As a result, the supervisory defendants were entitled to qualified immunity.  *See also Butler v. Corizon Health, Inc.*, No. 4:16-CV-00590-AGF, 2017 WL 2935662, at *7-8  (E.D. Mo. July 10, 2017) (finding that an inmate's claim that a supervisory defendant was "liable solely on the basis of inadequate staffing without showing he knew of the shortage, was deliberately indifferent to the shortage, or created that shortage with the intent to cause harm cannot withstand summary judgment."); *Perez-Gutierrez v. Lampert*, No. CIV. 00-1689-HA, 2002 WL 31689536, at *7 (D. Or. Sept. 30, 2002) ("Any delays in plaintiff's dental treatment during this time were attributable to an unfortunate shortage of dentist, rather than deliberate delay intended to cause plaintiff 'unnecessary and wanton infliction of pain.'").

Defendant Stange admits that he was aware of the shortage of dentists and the long wait times.  However, the minutes from the medical advisory meetings, at which Defendant Stange was often present, specifically and repeatedly note that Corizon was actively recruiting and seeking out additional dental staff.  Doc. No. 71-5.  Further, it is undisputed that the medical service provider, in this case, Corizon, was charged with hiring medical and dental staff, not Defendants Lewis and Stange.  Plaintiff is correct that merely "[c]ontracting out prison medical care does not relieve [Defendants] of its

18

constitutional duty to provide adequate medical care to those in its custody….” *West v. Atkins*, 487 U.S. 42, 55 (1988).  But, here Defendant Stange was aware that Corizon was actively recruiting and trying to hire additional dentists and although he knew there were staff shortages, he believed that inmates were still receiving dental care when needed pursuant to MDOC policy.  *See* Doc. No. 49-3.  Plaintiff has not shown otherwise.

As to Defendant Lewis, there is no evidence that he was even aware of the staffing shortages.  While the dental staff shortages at SECC are indeed unfortunate, there is simply no evidence that such shortages were created or exacerbated by either Defendant Lewis or Defendant Stange.  *See Cullor,* 830 F.3d at 838-39.  There is likewise no evidence that either Defendant attempted to thwart, prevent, or complicate the recruitment process for new dentists.  *See id.; see generally Fields v. Gander*, 734 F.2d 1313 (8th Cir. 1984).

 In sum, the evidence demonstrates that Corizon was actively recruiting additional dentists, both full and part time, and there is no evidence of deliberate indifference by either Defendant Lewis or Defendant Stage with respect to this staff shortage.

Moreover, Plaintiff has not sufficiently demonstrated any detrimental effect of the delay in his treatment.  “Because [the plaintiff’s] deliberate indifference claim is based on a ‘delay in medical treatment,’ we measure ‘the objective seriousness of the deprivation … by reference to the *effect* of delay in treatment.”  *Cullor*, 830 F.3d at 837 (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  “To establish this effect, the inmate ‘must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.’”  *Id.*  While the Court is sympathetic to the dental

pain that Plaintiff has endured, he has not established that the complicated extraction performed by Dr. Goodhand was at all attributable to the delay in treatment by verifying medical evidence.  *See Halfacre v. Correct Care Solutions*, No. 5:16-cv-00313-JLH-JJV, 2017 WL 3598782, at \*5 (E.D. Ark. July 28, 2017) (finding that a delayed extraction alone was insufficient to demonstrate deliberate indifference); *see Butler*, 2017 WL 2935662, at \*1-3, 5 (finding that the plaintiff failed to demonstrate that a delayed extraction constituted inadequate medical treatment).  Further, the medical records indicate that medication was routinely administered to Plaintiff following the extraction to manage his pain.  Doc. Nos. 47-1, 47-2.[5]

To the extent Plaintiff argues that there is an "extraction only" practice at SECC, such claim is unsupported by the record.  The SECC Standard Operating Procedure for Dental/Oral Care (SOP 11-36.1) contains no such policy, but rather sets out the priority of care for various dental needs based on the severity of the issue.  Doc. No. 49-7.  While the Court recognizes that "practice" can differ from written policy, Plaintiff has not offered any evidence regarding this practice aside from his own allegations.  Regardless, as discussed above, Plaintiff's claim regarding the extraction only practice was not procedurally exhausted and is thus not proper before this Court.  *See Grievance No. 21-643.*

In sum, Plaintiff has failed to show that there was a violation of his constitutional

---

[5]      To the extent Plaintiff's delayed treatment claim is also referring to being placed on a waitlist for the filling of Tooth #3 and #31 in June 2020, he has likewise failed to demonstrate the detrimental effect of such delay.  Further, as previously discussed, the grievance as to this issue was not procedurally exhausted.

rights under the Eighth Amendment and therefore Defendants Lewis and Stange are

entitled to qualified immunity.

**<u>CONCLUSION</u>**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Lewis' and Stange's motion for

summary judgment is **GRANTED**.  (Doc. No. 48).   All claims against Defendants Lewis

and Stange have been resolved.



_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2023.